UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIZHEN CHEN,<br><br>                    Petitioner(s),<br><br>      v.<br><br>TODD BLANCHE, et al.,<br><br>                    Respondent(s). | CASE NO. C26-832-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner Sizhen Chen filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. No. 5. Petitioner left China in 2024, fleeing abuse by her ex-husband, and was immediately detained upon arrival in the United States on or about October 10, 2024. *Id.* at 6. On August 4, 2025, an immigration judge denied her request for asylum, ordered her removed to China, but also granted withholding of removal. *Id.*; Dkt. No. 9 ¶ 9.

Over five months ago, the Government[1] notified Petitioner of an intent to remove her to Uganda, Mexico, or Guatemala but has not done so and has apparently not obtained a travel document to any country on Petitioner's behalf. As she has now been detained for more than six months, she seeks immediate release and requests that the Court enjoin her removal to a third

[1] This order refers to the Federal Respondents—Acting Attorney General of the United States Todd Blanche; U.S. Department of Homeland Security Secretary Markwayne Mullin; U.S. Immigration and Customs Enforcement ("ICE"); and Julio Hernandez, U.S. Citizenship and Immigration Services' acting Seattle field office director—generally as "the Government." Acting Attorney General Blanche and Secretary Mullin both assumed office after the petition was filed and are thus substituted for their predecessors under Federal Rule of Civil Procedure 25(d).

ORDER GRANTING HABEAS PETITION - 1

country without due process. For the following reasons, the Court will grant the petition and grant in part Petitioner's request for related injunctive relief.

## I.    BACKGROUND

Petitioner is a native and citizen of China who entered the United States in October 2024 without being inspected, admitted, or paroled. Dkt. No. 10-1. Upon crossing the border, she was detained by Customs and Border Protection, transferred to a detention center in San Diego, and processed for expedited removal. *Id.* U.S. Citizenship and Immigration Services conducted an interview and determined that she had a credible fear of returning to China. Dkt. No. 9 ¶ 6. She was later transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where she was placed in removal proceedings. Dkt. No. 10-3.

On August 4, 2025, an immigration judge ("IJ") held a hearing and ordered Petitioner removed to China and simultaneously granted Petitioner's request for withholding of removal to China. Dkt. No. 10-4. U.S. Immigration and Customs Enforcement ("ICE") then served Petitioner with a notice of intent to remove her to Uganda, which she refused to sign. Dkt. No. 9 ¶ 10, Dkt. No. 10-5. Petitioner moved to reopen her removal proceedings, claiming a fear of removal to Uganda. Dkt. No. 9 ¶ 11. But an IJ denied that motion, explaining that there was "no evidence submitted that [the Department of Homeland Security] seeks to remove respondent to Uganda" and, thus, no evidence of changed circumstances warranting reopening. Dkt. No. 10-6 at 2. Just over two weeks later, the Government served Petitioner with a notice of intent to remove her to either Uganda, Mexico, or Guatemala (apparently without specifying which country). Dkt. No. 9 ¶ 12. Petitioner again refused to sign the notice. *Id.* Nearly three months later, ICE served Petitioner a letter indicating its decision to continue her detention. Dkt. No. 10-7. In February 2026, ICE demanded that Petitioner provide "3-5 countries in 2 weeks for third country removal" or else ICE would deem her to have "fail[ed] to comply with removal efforts." Dkt. No. 9 ¶ 16.

On March 11, 2026, Petitioner filed a proposed habeas corpus petition and moved for leave to proceed in forma pauperis and for appointment of counsel, which the court granted. Dkt. Nos. 1, 2, 4. The petition is now fully briefed and ripe for resolution. For the following reasons, the Court will grant the petition.

## II.    ANALYSIS

### A.    Legal Standards

#### 1.  Habeas Jurisdiction

To succeed on a habeas petition, a petitioner must show she "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

#### 2.  Legal Framework Governing Detention of Non-Citizens Subject to an Order of Removal

Detention of noncitizens following an order of removal is governed by the INA. "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney

General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

**B.      Petitioner's Continued Detention Is Unlawful.**

Petitioner is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for more than six months since her removal order became final, Petitioner's detention is not "presumptively reasonable." *Id.* at 701. Petitioner has met her burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. She may not be removed to China, no third country has agreed to accept her, and the Government has apparently not identified a third country that *might* accept her—as evidenced by ICE's notice identifying three different possible countries of removal followed by its demand, months later, that she identify additional countries. Dkt. No. 9 ¶¶ 12, 16. Under these circumstances, Petitioner has

satisfied her burden. *See, e.g.*, *Elshourbagy v. Bondi*, No. 2:25-cv-02432-TL, 2025 WL 3718993, at *4 (W.D. Wash. Dec. 23, 2025) (citing cases).

The burden now shifts to the Government to respond with evidence sufficient to rebut Petitioner's showing. *Zadvydas*, 533 U.S. at 701. Here, the Government has made almost no effort in this regard. Despite acknowledging that the six-month presumptively reasonable period has elapsed and that Petitioner cannot be removed to her home country, the Government's only argument supporting her continued detention is that "she is subject to a final order of removal and can be removed" (after "receiving proper notice of removal to a third country and the opportunity to express fear of removal"). Dkt. No. 8 at 6–7. The Government does not identify any third country to which it is currently trying to remove her. The mere fact that Petitioner is removable is not enough to carry the Government's burden to show that removal is reasonably foreseeable.

Because Petitioner is entitled to habeas relief under *Zadvydas*, the Court will therefore grant her habeas petition.

**C.      The Court Will Grant in Part Petitioner's Requests for Injunctive Relief.**

As noted earlier in this order, Petitioner seeks not only her release from detention but also injunctive relief related to her potential removal to a third country under the Fifth Amendment to the United States Constitution, 8 U.S.C. § 1231, the Convention Against Torture, implementing regulations of the Immigration and Nationality Act, and the Administrative Procedure Act ("APA"). *See* Dkt. No. 1 at 14–18. The Government contends that because ICE is lawfully pursuing Petitioner's removal to third countries, Petitioner's request to limit ICE from doing so should be denied. Dkt. No. 8 at 11–12.

The Court will grant some of Petitioner's requested injunctive relief, after addressing its jurisdiction to hear Petitioner's claims.

ORDER GRANTING HABEAS PETITION - 5

1.      *Petitioner's Membership in the D.V.D. Class Does Not Deprive the Court of Jurisdiction.*

The Government argues that the Court "should decline to exercise jurisdiction over Petitioner's third country removal claim as a matter of comity" because she is a member of the certified plaintiff class in *D.V.D v. Department of Homeland Security*, Civ. A. No. 25-10676 (D. Mass.). Dkt. No. 8 at 12. For support, it relies on *Pride v. Correa*, in which the Ninth Circuit held that, when "the complainant is a member in a class action seeking the same relief[,]" a court "may dismiss those portions of the complaint which duplicate the class action's allegations and prayer for relief." 719 F.3d 1130, 1133 (9th Cir. 2013) (citation modified) (quoting *Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979)). But the Ninth Circuit went on to explain that "a district court may not 'dismiss[] those allegations … which go beyond the allegations and relief prayed for in [the class action]." *Id.* (first and last alterations in original) (quoting *Crawford*, 599 F.2d at 893). Here, dismissal would be inappropriate because Petitioner's individual claims seek relief she is unable or unlikely to obtain in the *D.V.D.* litigation.

Petitioner's due process claim is not identical to the claims in the *D.V.D.* class action because she seeks a meaningful opportunity to seek withholding of removal in the event she fears persecution in a designated third country—a claim not at issue in *D.V.D. See Nguyen v. Scott*, 796 F. Supp. 3d 703, 729–30 (W.D. Wash. 2025); *see also Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025); *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025).

And as the Government acknowledges, dismissal of individual claims that duplicate a class action is not required, rather, it is "within the court's discretion" and grounded in "its inherent power to control its own docket." Dkt. No. 8 at 12 (citing *Crawford*, 599 F.2d at 893). As the Ninth Circuit explained in *Crawford*, "[a] court *may choose* not to exercise its jurisdiction when

another court having jurisdiction over the same matter has entertained it and can achieve the same result." 599 F.2d at 893. Here, ample authority supports the Court's exercise of jurisdiction over Petitioner's third-country removal claims.

In sum, Petitioner's membership in the *D.V.D.* class does not deprive the Court of jurisdiction to adjudicate her claims for individual relief in this habeas action.

        *2.        The Court Will Grant Some of Petitioner's Requests for Injunctive Relief.*

Petitioner also seeks prospective injunctive relief adjacent to her habeas petition seeking protection in the event the Government attempts to remove her to a third country, or if the Government re-detains her. Dkt. No. 5 at 22–23. Specifically, she requests an order enjoining the Government from removing her to a third country without notice and a meaningful opportunity to respond, or from re-detaining her without first holding a hearing before a neutral decisionmaker. *Id.* at 26. She also requests an order enjoining the Government from removing her to *any* third country because the Government's third-country removal policy seeks to impose unconstitutional punishment on its subjects. *Id*. at 23–25.

Because she invoked its habeas and federal question jurisdiction, the Court could provide equitable relief on those claims if Petitioner met the standard for a permanent injunction. *See* Dkt. No. 5 at 3; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Thus, the Court turns to consider the availability of the relief Petitioner requests.

        a.        <u>Respondents Must Comply With Federal Regulations if Petitioner is Re-Detained.</u>

Petitioner asserts that she is entitled to a hearing in advance of any future re-detention. Dkt. No. 5 at 21–22.

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to 'provide due process protections to [noncitizens]

ORDER GRANTING HABEAS PETITION - 7

following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).  The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13.  The regulation also provides that, "[u]pon revocation [of an order of supervision], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3).

Here, the Government does not dispute that 8 C.F.R. § 241.13(i) would govern any future revocation of Petitioner's release but argues that the Court should not prescribe any additional procedures at this time, when Petitioner's future release has not yet been revoked.  Dkt. No. 8 at 7.  The Court disagrees and finds that it is appropriate to order at this time that if Petitioner is re-detained after she is released consistent with this order, the Government must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).

        b.      <u>The Government Must Comply With the Law In Seeking Petitioner's Removal to a Third Country.</u>

Petitioner also requests an order enjoining the Government from removing her to a third country without notice and a meaningful opportunity to be heard in reopened removal proceedings.  The Government contends that Petitioner is not entitled to such relief because she has not demonstrated that her removal to a third country "is imminent" (overlooking, it seems, the

ORDER GRANTING HABEAS PETITION - 8

dissonance between this argument and the Government's position that removal to a third country is reasonably foreseeable). Dkt. No. 8 at 11. The Court will grant Petitioner's request.

Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Id.* The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened … because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting [her]." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. *Nguyen*, 796 F. Supp. 3d at 739; *Aden*, 409 F. Supp. 3d at 1011; *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *3–4 (W.D. Wash. Oct. 23, 2025).

Consistent with *Aden*, the Court will grant Petitioner's request requiring that the Government may not remove or seek to remove Petitioner without notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *Nguyen,* 796 F. Supp. 3d at 727 ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful

ORDER GRANTING HABEAS PETITION - 9

opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F.Supp.3d at 1010–1011)).  In resisting this relief, the Government inaptly cites the standard for granting a preliminary injunction, which is not at issue here. Dkt. No. 8 at 11 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  Petitioner has demonstrated a likelihood of irreparable injury and an "real and immediate threat" of being subjected again to the Government's third-country removal policy (*City of L.A. v. Lyons*, 461 U.S. 95, 102, 111 (1983)), as set forth in ICE's July 9, 2025 memorandum, which the Government has not repudiated.  *See* Dkt. No. 5-1.

c.      <u>The Court Denies Petitioner's Request For an Order Enjoining Removal to Any Third Country.</u>

Finally, Petitioner argues that ICE's third-country removal policy is unconstitutionally punitive in violation of her Fifth and Eighth Amendment rights and seeks to enjoin the Government from removing her to any third country on that basis.  Dkt. No. 1 at 18.

As a threshold matter, numerous courts, including this one, have held the Government's third-country removal policy is unconstitutional.  *See, e.g.*, *Kumar*, 2025 WL 3204724, at *6; *Nguyen*, 796 F. Supp. 3d at 735 (collecting cases).  The Government does not address this growing body of legal authority nor does it dispute the underlying factual allegations supporting it.

Although the Court stands by its prior conclusion (unrebutted here) that the Government's third-country removal policy violates due process, it nonetheless denies Petitioner's request for a broad permanent injunction against *any* third-country removal.  This order requires the Government to provide Petitioner with due process in effectuating any future third-country removal.  As such, on this record, it is not clear to the Court that additional injunctive relief is necessary to prevent irreparable injury at this time.  *See eBay Inc. v. MercExchange, LLC*, 547

ORDER GRANTING HABEAS PETITION - 10

U.S. 388, 391 (2006) (discussing standard for permanent injunctive relief); *cf. Kumar*, 2025 WL 3204724, at *9 (enjoining third-country removal where petitioner was issued a notice that ICE intended to remove him to a third country where he would likely face persecution).

### III.   CONCLUSION

The Court GRANTS Petitioner's habeas petition.  Dkt. No. 5.

1. The Government is ORDERED to release Petitioner from custody no later than April 4, 2026.  Any future re-detention must comply with 8 C.F.R. § 241.13(i).

2. The Court further ORDERS that if the Government continues to pursue removal of Petitioner to a third country, it must provide her with written notice of its intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

3. No later than April 6, 2026, the Government shall file a declaration confirming that Petitioner has been released from custody.

4. The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 3rd day of April, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING HABEAS PETITION - 11